UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| JASON DUHAIME, | Case No. 22-cr-10290-WGY |
| Defendant | |

### GOVERNMENT'S MOTION *IN LIMINE*
### TO ADMIT DEFENDANT'S STATEMENTS AND
### <u>TO PRECLUDE ADMISSION OF SELF-SERVING HEARSAY</u>

The United States of America moves *in limine* to admit portions of statements the defendant made to a federal law enforcement officer on September 13 and 14, 2022. These statements, which form the basis of the charges in this case, were voluntary and are not hearsay when offered by a party opponent. The government simultaneously moves to preclude the defense from offering evidence of or alluding to the defendant's own self-serving statements at trial. As outlined more fully below, any such statement not offered by the government is inadmissible hearsay if offered to prove the truth of the matter asserted. The defense should be prohibited from mentioning these statements in its opening statement and from eliciting information about them through direct or cross-examination.

### <u>Relevant Facts</u>

On September 13, 2022, the defendant was working on the campus of Northeastern University ("NU") in Boston, Massachusetts, as the director of the Immersive Media Lab (the "Lab"), one of several computer labs on campus used by students and faculty. At approximately 7:00 p.m. that evening, the defendant called the NU Police Department emergency line from inside

the Lab and reported injuries to his "hand" caused by "very sharp" objects expelled from a plastic "Pelican case"—a type of hard plastic case commonly used to store electronic equipment—that he had opened inside the Lab.  The defendant also told the police dispatcher that he discovered a "violent note" inside the case.  Police officers and other first responders arrived shortly thereafter and, later, transported the defendant to a Boston hospital for decontamination and monitoring.

At approximately 10:00 p.m., a Task Force Officer ("TFO") with the FBI's Joint Terrorism Task Force, Michael Connelly, and a detective from the Northeastern University ("NU") Police Department, Brian Nocerino, went at the emergency department and interviewed the defendant about the reported incident.  The interview, which lasted approximately two hours, was recorded.[1] In substance, the defendant told Connelly and Nocerino that he was the victim of some type of pressurized explosion resulting in minor injuries to his arms, and that the case contained a threatening letter.  Even after being warned that it was a crime to lie to a federal law enforcement officer, the defendant expressly denied fabricating the incident.

The following day, September 14, 2022, the defendant called the NU Police Department two times asking to speak with Detective Nocerino.  At approximately 2:00 p.m. that afternoon, TFO Connelly and Detective Nocerino spoke with the defendant at the hotel where he was staying. The conversation was recorded.  Among other things, the defendant complained about the media contacting him, denied fabricating the incident, and told the officers that his statements from the night before were truthful.  TFO Connelly and Detective Nocerino ended the conversation and left the hotel shortly after 3:00 p.m.

---

[1] The defendant's recorded interviews were previously the subject of a motion to suppress, which the Court denied on November 20, 2023.  [ECF No. 59.]  The government's opposition to the motion to suppress, ECF No 47, contains a more fulsome description of the interviews and the surrounding facts and circumstances.

The defendant was subsequently charged in a three-count Indictment with one count of conveying false information and hoaxes in violation of 18 U.S.C. § 1038(a), and two counts of making false statements to a federal agent (TFO Connelly) in violation of 18 U.S.C. § 1001(a)(2). In order to prove these charges at trial, the government intends to admit portions of the defendant's recorded interviews with TFO Connelly and Detective Nocerino.  Attached to this motion are transcripts of the two recorded interviews.  Through TFO Connelly, the government intends to seek the admission of audio recordings of the highlighted portions.

<u>**Discussion**</u>

Title 18, United States Code, Section 3501(a) proves that "a confession ... shall be admissible in evidence if it is voluntarily given" and that "the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness."  18 U.S.C. § 3501(a).  The statute defines "confession" to include "any self-incriminating statement made or given orally or in writing." 18 U.S.C. § 3501(e).[2]  To allow the government to admit the defendant's statements—and to prohibit the defense from offering these or other statements on its own behalf—this court must make three findings: *first*, that the statements were voluntary within the meaning of the Due Process Clause and also under 18 U.S.C. § 3501; and *second*, that the government, as a party opponent, can admit the defendant's statements while the defendant cannot.  The Court should also find that restricting the admissions to these short exchanges does not unfairly prejudice the defendant.  The government will address each of these legal issues in turn.

---

[2] The government is skeptical that the defendant's statements to TFO Connelly and Detective Nocerino satisfy this definition of "confession" and is seeking a finding of voluntariness out of an abundance of caution.

1.  **The Defendant's Statements Were Voluntary.**

The First Circuit has instructed that "only confessions procured by coercive official tactics should be excluded as involuntary" under the Due Process Clause.  *United States v. Boskic*, 545 F.3d 69, 78 (1st Cir. 2008) (*quoting United States v. Byram*, 145 F.3d 405, 407 (1st Cir. 1998)). Whether official tactics were coercive is a judicial determination made by evaluating the totality of circumstances.  *Byram*, 145 F.3d at 408; *see also* 18 U.S.C. § 3501(b) ("The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession.").  Typically, coercive police conduct must include threats of retaliation, threats of violence, or evidence of consciously misleading conduct on the part of federal agents.  *United States v. Flemmi*, 225 F.3d 78, 92 (1st Cir. 2000) (citing *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963).

As described in the government's Opposition to the Defendant's Motion to Suppress, the officers' conduct during the interviews was cordial and profession, and involved no attempts to mislead the defendant, no coercive conduct, and no other forms of "chicanery."  [ECF No. 47 at 11-13.]  Under both the Due Process and § 3501 standards, therefore, the Court should find that the defendant's statements were voluntary.[3]

2.  **The Defense Should be Precluded from Admitting the Defendant's Statements.**

It is well-settled that a criminal defendant generally cannot introduce his own out-of-court statements into evidence because it constitutes hearsay.  As the Ninth Circuit explained:

> Ortega's non-self-inculpatory statements [to a government agent] are inadmissible even if they were made contemporaneously with other self-inculpatory statements. The self-inculpatory statements, when offered by the government, are admissions by a party-

---

[3] As a practical matter, the Court may already have made such a determination.  The defendant challenged the voluntariness of his statements in his motion to suppress.  [ECF Nos. 38, 39.]  The Court denied that motion, although it did not make an express finding of voluntariness.

> opponent and are therefore not hearsay, see Fed. R. Evid. 801(d)(2),
> but the non-self-inculpatory statements are inadmissible hearsay. If
> the district court were to have ruled in his favor, Ortega would have
> been able to place his exculpatory statements before the jury without
> subjecting himself to cross-examination, precisely what the hearsay
> rule forbids.

*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (citations, internal quotation marks, alterations omitted). The First Circuit has espoused this same principle, explaining that "[t]he requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them." *United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985)*; see also United States v. Cianci*, 378 F.3d 71, 105-07 (1st Cir. 2004) (affirming exclusion of taped statement of defendant speaking to a government agent, which defendant sought to admit to show that he did not engage in corrupt activity).

Should the defense attempt to admit the defendant's own self-serving statements to law enforcement, the only logical purpose would be to prove the truth of the matters asserted by the defendant. For example, during the September 13th hospital interview the defendant made various false exculpatory statements about suspicious persons supposedly lurking near the Lab, his discovery of a laptop computer (later found to contain the threat letter the defendant claimed he found in the Pelican case) in an unattended computer lab on the first floor of the building where he worked, and other matters. The defense may offer these statements to try and prove that, in fact, suspicious people were near the Lab prior to the incident or that the computer on which the threatening letter was found was in a first-floor lab on September 13th. Because they serve no non-hearsay purpose, the defense should be prohibited from mentioning these and other statements in its opening statement, and from eliciting information about them through cross-examination of the government's witnesses. *See Cianci*, 378 F.3d at 105-07 (affirming exclusion of taped statement of defendant speaking to a government agent, which defendant sought to admit to show that he did

not engage in corrupt activity).  To hold otherwise would be to permit the defense to place the defendant's false exculpatory statements before the jury without subjecting the defendant to cross examination – precisely what the hearsay rules are designed to prohibit.

### 3. No Other Portions of the Defendant's Interviews Are Necessary to Contextualize Those the Government Has Identified.

The Rule of Completeness allows an adverse party to require that part of a recorded statement be introduced when the party's opponent has unfairly omitted it.  Fed. R. Evid. 106.  The doctrine does not "render admissible the evidence which is otherwise inadmissible under the hearsay rules." *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996).  In other words, the defense cannot use the Rule of Completeness as a mechanism to admit the defendant's self-serving hearsay.  As described in *Ortega*, doing so would allow the defendant "to place his exculpatory statements before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids." *Ortega*, 203 F.3d at 682.  The Rule of Completeness is not an evidentiary back-door.

Rather, the doctrine applies "only where the introduction of limited pieces of information create[] unfairness or potential for misimpression." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001).  Here, no such unfairness or potential for misimpression exists.  Indeed, along with its other proposed exhibits, the government has already shared the portions of the interviews it seeks to admit with the defense (that is, the highlighted portions of the attached exhibits) and the defense has lodged no completeness objections.  That is because the interview excerpts are reasonably complete within the meaning of Rule 106 and create no potential for misimpression or unfairness.

## **Conclusion**

The government respectfully requests that this Court find that the defendant's statements to law enforcement agents on September 13 and 14, 2022, were voluntary under both the Due Process Clause and 18 U.S.C. § 3501, and that the government may admit such statements in its case-in-chief.  The government further asks the Court to preclude the defense from mentioning other of the defendant's statements (that is, statements of the defendant that the government does not admit) in its opening statement or through cross examination of the government's witnesses.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:      */s/ Jason A. Casey*
Jason A. Casey
Timothy H. Kistner
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Jason A. Casey*
Jason A. Casey
Assistant United States Attorney

Date: June 14, 2024